IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

J & J SPORTS PRODUCTIONS, INC.

    Plaintiff

v.                                                       Civil No. **PJM 15-172**

EL RODEO RESTAURANT, LLC
T/A EL RODEO RESTAURANT
T/A EL RODEO RESTAURANT AND
SPORTS BAR

    Defendant

## MEMORANDUM OPINION

J&J Sports Productions, Inc. ("J&J Sports Productions") has sued El Rodeo Restaurant, LLC, t/a El Rodeo Restaurant, t/a El Rodeo Restaurant & Sports Bar ("El Rodeo") for violations of 47 U.S.C. § 553 (which proscribes theft from a cable network), 47 U.S.C. § 605 (which protects companies against theft of their proprietary communications), and the common law tort of conversion. El Rodeo was properly served and failed to plead or otherwise respond to the Complaint, and the Clerk of the Court has entered Default against El Rodeo. Following entry of default, J&J Sports Productions filed a Motion for Judgment by Default, ECF No. 8, seeking $151,500 in damages. For the reasons that follow, J&J Sports Productions' Motion for Judgment by Default will be **GRANTED-IN-PART (as to liability)**, but **DENIED-IN-PART (as to damages)**.

I.

J&J Sports Productions distributes sports and entertainment programming. It purchased the distribution rights to the *Manny Pacquiao v. Juan Manuel Marquez, IV Welterweight Fight Program* ("Program"), broadcast on December 8, 2012. J&J Sports Productions entered

1

sublicensing agreements with commercial entities throughout North America, granting limited public exhibition rights to those entities for the benefit and entertainment of their patrons. The transmission of the Program was encrypted and made available only to J&J Sports Productions' customers; not including El Rodeo, a sports bar located in Riverdale, Maryland. J&J Sports Productions alleges that El Rodeo violated both 47 U.S.C. §§ 553 and 605 by knowingly intercepting, receiving, and exhibiting the Program without authorization. In the Complaint and Motion for Judgment by Default, J&J Sports Productions seeks statutory damages of $100,000 for El Rodeo's violation of § 605, $50,000 for the violation of § 553, and $1,500 in compensatory damages for conversion. El Rodeo has not responded to any of J&J Sports Productions' filings.

## II.

Pursuant to Federal Rule of Civil Procedure 55(a), "[w]hen a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk must enter the party's default." Where a default has been previously entered and the complaint does not specify the amount of damages, the court may enter a default judgment upon the plaintiff's application and notice to the defaulting party, pursuant to Rule 55(b)(2). A defendant's default does not automatically entitle the plaintiff to entry of a default judgment; rather, that decision is left to the discretion of the court. *See Baltimore Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011). The Fourth Circuit has a "strong policy that cases be decided on their merits." *United States v. Shaffer Equip. Co.*, 11 F.3d 450, 453 (4th Cir. 1993). Nevertheless, default judgment may be appropriate where the "adversary process has been halted because of an essentially unresponsive party." *S.E.C. v. Lawbaugh*, 359 F. Supp. 2d 418, 421 (D. Md. 2005) (citing *Jackson v. Beech*, 636 F.2d

831, 836 (D.C. Cir. 1980)). In determining whether to award default judgment, the court takes as true the well-pleaded factual allegations in the complaint as to liability, but not as to damages. *See Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001).

### III.

Although the Court finds that default judgment is proper, J&J Sports Productions cannot recover the full amount of damages it seeks. J&J Sports Productions has repeatedly filed motions in this Court seeking excessive damages in nearly identical cases, and the Court has consistently imposed limitations on the damages for the same cause of action brought here. *See, e.g., J & J Sports Prods., Inc. v. Sabor Latino Rest., Inc.*, CIV. PJM 13-3515, 2014 WL 2964477 (D. Md. June 27, 2014); *J & J Sports Prods., Inc. v. Melgar*, CIV. PJM 11-3339, 2012 WL 1852270 (D. Md. May 17, 2012); *J & J Sports Prods., Inc. v. Castro Corp.*, CIV.A. DKC 11-1599, 2012 WL 1883764 (D. Md. May 21, 2012); *J & J Sports Productions, Inc. v. Quattrocche*, Civil Action No. WMN–09–CV–3420, 2010 WL 2302353, at *1 (D. Md. June 7, 2010). The Court registers its concern with J&J Sports Productions's continuing disregard of the Court's many opinions written on this issue.

J&J Sports Productions seeks damages for both § 605 and § 553. "Generally, however, plaintiffs cannot recover under both statutes for the same conduct and courts allow for recovery under § 605 as it provides for the greater recovery." *Quattrocche*, 2010 WL 2302353, at *1 (citing *J & J Sports Productions, Inc. v. 291 Bar & Lounge, LLC*, 648 F. Supp. 2d 469 (E.D.N.Y. 2009); *see also Castro Corp.*, 2012 WL 1883764. "Courts have similarly not allowed recovery for claims of conversion, as they would not exceed those under §§ 553 or 605 and would result in double-recovery." *Quattrocche*, 2010 WL 2302353, at *1 (citing *J & J Sports Productions,*

*Inc. v. J.R .'Z Neighborhood Sports Grille, Inc.*, Civ. No. 2:09–03141, 2010 WL 1838432, at *2 (D.S.C. 2010)).

As this Court has repeatedly set forth, theoretically at least J&J Sports Productions may recover, at most, $110,000, consisting of $10,000 in statutory damages, the maximum allowable under § 605(e)(3)(C)(i)(II), and $100,000 in enhanced damages, the maximum allowable under § 605(e)(3)(C)(ii). *See Castro Corp.*, 2012 WL 1883764, at *3. That does not mean that J & J should receive anywhere near either amount.

### A.

Judge Nickerson of this Court set forth the relevant considerations for the statutory damages analysis:

> Plaintiff has elected an award of statutory damages, which under 47 U.S.C. § 605(e)(3)(C)(i)(II) entitles Plaintiff to an award "as the court considers just," between a range of $1000 to $10,000 for each unauthorized reception and publication of a radio communication by the defendants in violation of section 605(a). Courts in this Circuit have used two different approaches to exercising [ ] discretion in awarding damages under § 605(e)(3)(C)(i)(II). The first approach has two variations. This approach involves multiplying a certain amount by either the number of patrons observed in the defendant's establishment at the time the program was shown or by the maximum occupancy of the establishment. *Joe Hand Promotions, Inc. v. Bougie, Inc.*, Civ. No. 109–00590, 2010 WL 1790973, at *5 (E.D. Va. April 12, 2010) (patrons present); [*Kingvision Pay–Per–View, Ltd. v.*] *Admiral's Anchor*, 172 F.Supp.2d [810,] 812 [S.D.W.Va. 2001] (maximum occupancy); *Entertainment by J & J, Inc. v. Gridiron, Inc.*, 232 F.Supp.2d 679, 681 (S.D.W.Va. 2001) (maximum occupancy). The first variation seeks to approximate the defendant's profits or the plaintiff's lost earnings assuming each patron would have ordered the event for residential viewing. [*J & J Sports Prods., Inc. v.*] *291 Bar & Lounge*, 648 F.Supp.2d [469,] 474 [E.D.N.Y.2009]. The second variation seeks to award the license fee the defendant would have paid if it had legally purchased the event for exhibition. *Id.* The other approach to calculating damages is to award a flat sum per violation.

*Quattrocche*, 2010 WL 2302353, at *2 (D. Md. June 7, 2010).

To support its argument that it is entitled to the maximum amount of statutory damages, J&J Sports Productions attaches the affidavit of a private investigator, Brian Stephens, who

attended the broadcast at El Rodeo. He observed five televisions that displayed the broadcast. He noted that the maximum occupancy was 150 persons, and there were approximately 100 persons present. Stephens paid a cover charge of $5.00 to enter the restaurant, as did apparently every other person. J&J Sports Productions has also submitted a "rate card" indicating that the cost to purchase the Program would have been $4,200 for a "minimum seating" of 100-200 persons.

Other than information about maximum occupancy and a cover charge, J&J Sports Productions has provided no way to approximate the additional profits El Rodeo might have received as a result of the broadcast. J & J also does not offer any evidence as to the price each of the bar's patrons might have paid had they purchased the program on their own. Consistent with prior case law in this District, the Court will accept the cost to purchase the Program as the direct loss to J&J Sports Productions, which will thus be awarded $4,200 in statutory damages. *See, e.g., J & J Sports Prods., Inc. v. Greene*, CIV.A. 10-0105, 2010 WL 2696672 (D. Md. July 6, 2010).

**B.**

The next inquiry is whether J&J Sports Productions is entitled to enhanced damages, and in what amount. Pursuant to § 605(e)(3)(C)(ii), where the court finds that a violation was "committed willfully and for purposes of direct or indirect commercial advantage or private financial gain, the court in its discretion may increase the award of damages . . . by an amount of not more than $100,000." Courts look to several factors to determine whether enhanced damages are warranted: 1) evidence of willfulness; 2) repeated violations over an extended period of time; 3) substantial unlawful monetary gains; 4) advertising the broadcast; and 5) charging an admission fee or charging premiums for food and drinks. *See, e.g., Quattrocche*, 2010 WL 2302353, at *2.

5

Rather than providing evidence of the foregoing factors, J&J Sports Productions simply asks for the maximum enhancement of $100,000. This amount is clearly excessive in relation to awards in similar cases. To be sure, El Rodeo committed the violation willfully and for purposes of commercial advantage or private gain, as evidenced by the $5.00 cover charge, and therefore J&J Sports Productions might be entitled to some enhanced damages. But there is no evidence of repeat violations, advertising of the broadcast, or the charging of premiums for food and drinks. J&J Sports Productions has therefore failed to support its request for the maximum enhancement.

Still, some enhanced damages might well be appropriate to deter potential future unlawful uses of communications. Where there are no allegations of repeat behavior or other factors suggesting egregious willfulness, courts have generally awarded three to five times the statutory damages award as enhanced damages. *See, e.g., Melgar*, 2012 WL 1852270, at *4 (awarding three times the statutory damages in enhanced damages); *Quattrocche,* 2010 WL 2302353, at *3 (awarding five times the statutory damages). In *Quattrocche*, 2010 WL 2302353, at *3, where—as here—defendant charged an admission fee for the unlawful exhibition of a program, Judge Nickerson calculated enhanced damages by multiplying the minimum statutory damages by a factor of five. Where the evidence suggests that no admission fee was charged, Judges in this District have typically multiplied the statutory damages by a factor of three to determine enhanced damages. *See, e.g., Castro Corp.*, 2012 WL 1883764, at*4 (D. Md. May 21, 2012); *Greene*, 2010 WL 2696672.

On the other hand, Judges in this District recently found that J & J has been on notice, at least since *Quattrocche*, that in a case of non-egregious willfulness, it was not eligible to recover the maximum damages authorized by statute and that it could not simultaneously recover damages under section 553, section 605, and conversion for the same conduct. Undaunted, J & J

6

has repeatedly filed motions seeking identical excessive damages in nearly identical cases, and the Court has consistently pointed out the limitations on damages sought for the same causes of action brought here. In light of J & J's failure to take note, Judges in this District have recently declined to award J & J <u>any</u> enhanced damages. *See J & J Sports Prods., Inc. v. Rumors Inc.*, CIV. CCB-14-2046, 2014 WL 6675646, at *4 (D. Md. Nov. 21, 2014) (citing *Sabor Latino Rest., Inc.*, 2014 WL 2964477, at *2); *J & J Sports Prods., Inc. v. Samlina, Inc.*, CIV.A. DKC 14-1713, 2015 WL 1531274, at *5 (D. Md. Apr. 3, 2015); *J & J Sports Prods., Inc. v. AKC Rest., Inc.*, CIV.A. DKC 14-2931, 2015 WL 1531279, at *5 (D. Md. Apr. 3, 2015); *J & J Sports Prods., Inc. v. Christian*, CIV.A. CCB-15-174, 2015 WL 2165516, at *1 (D. Md. May 7, 2015).

At some point, J & J may provide appropriate evidence entitling it to more substantial damages, including enhanced damages. But it has not done so here. Consistent with the reasoning recently expressed by other Judges of this Court, no enhanced damages will be awarded. The total amount of damages awarded, therefore, will be $4,200.

## IV.

For the foregoing reasons, J&J Sports Productions, Inc.'s Motion for Default Judgment will be **GRANTED** in the total amount of $4,200.

A separate Order will **ISSUE**.

/s/
PETER J. MESSITTE
UNITED STATES DISTRICT JUDGE

May 26, 2014